IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAURA DUGAN, an individual, | : |
| Plaintiff, | : CIVIL DIVISION No.: |
| | : **JURY TRIAL DEMANDED** |
| v. | : |
| TROON GOLF, LLC; WESTMORELAND COUNTRY CLUB; and JAMES RANKIN, | : |
| Defendants, | : |

## COMPLAINT- CIVIL ACTION

**I.   INTRODUCTION:**

1. Plaintiff, Laura Dugan ("Ms. Dugan" or "Plaintiff"), by and through her undersigned counsel and the law firm of Block & Associates, LLC, brings this action for declaratory judgment and injunctive, equitable, and monetary relief. This action is instituted to secure the protection of and to redress the deprivation of rights secured through Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.*, providing for relief against sex discrimination, including sexual harassment, hostile work environment, and retaliation in employment. Through supplemental jurisdiction, this Court's jurisdiction extends over Ms. Dugan's related state law claims of assault and battery because all such claims arise from a common nucleus of operative fact.

2. Ms. Dugan seeks a declaratory judgment, injunctive relief, and other equitable remedies, including backpay, compensatory damages, punitive damages, costs, and attorneys' fees and expenses.

## II. JURISDICTION AND VENUE:

3. This is an action authorized and instituted pursuant to Title VII and the PHRA.

4. This Honorable Court has jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. §§ 1331 and 1343, as this is a civil rights action arising under the laws of the United States.

5. This Honorable Court has supplemental jurisdiction over Ms. Dugan's state law claims pursuant to 28 U.S.C. § 1367, as those claims arise out of the same common nucleus of operative fact as her federal claims.

6. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b), as the relevant unlawful practices were committed in the Commonwealth of Pennsylvania in this judicial district.

## III. PARTIES:

7. Plaintiff is a female citizen of the United States and a resident of Pennsylvania, residing at 1067 Blackridge Road, Pittsburgh, PA 15235. Plaintiff has fulfilled all conditions requisite to the institution of this action under Title VII and the PHRA.

8. Defendant Troon Golf, LLC ("Troon") is an employer with a principal address of 15044 N. Scottsdale Road, Suite 300, Scottsdale, AZ 85254. Troon is subject to suit under Title VII. Troon was Ms. Dugan's employer at all times relevant to this action within the meaning of Title VII and the PHRA. Troon has also employed fifteen or more employees during the relevant time period.

9. Defendant Westmoreland Country Club ("WCC") maintains a principal address of 7100 Mellon Road, Export, PA 15632. WCC is subject to suit under Title VII and the PHRA, as WCC was, together with Troon, Ms. Dugan's employer at all times relevant to this action within the meaning of Title VII and the PHRA. WCC has also employed fifteen

or more employees during the relevant time period.

10. Defendants Troon and WCC were a single integrated enterprise as defined under Title VII and the PHRA.

11. In the alternative, Troon and WCC were a joint operation and Ms. Dugan's employer according to Title VII and the PHRA.

12. Defendant James Rankin ("Mr. Rankin") is a resident of the Commonwealth of Pennsylvania and is subject to suit under the laws of the Commonwealth. Mr. Rankin, Troon, and WCC are collectively referred to as "Defendants."

## IV. ADMINISTRATIVE PREREQUISITES:

13. On or about February 15, 2024, Ms. Dugan filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was later transferred to the Pennsylvania Human Relations Commission ("PHRC"), thereby satisfying the requirements of 42 U.S.C. § 200e-5(b) and (c), and 43 P.S. § 959(a).

14. Ms. Dugan's EEOC Charge was docketed as EEOC Charge No. 533-2024-01187, and the PHRC Charge was docketed as PHRC No. 202316963.

15. By correspondence dated February 20, 2025, Ms. Dugan received a Notice of Right to Sue for Charge No. 202316963 from the PHRC, advising Ms. Dugan she had ninety (90) days to file suit against Defendants.

16. Ms. Dugan filed the present Complaint within the statutory timeframe applicable to the claims alleged in this suit.

17. Ms. Dugan has therefore exhausted her administrative remedies and has complied with all conditions precedent to maintain this action.

## V. FACTUAL BACKGROUND:

18. In June of 2021, Troon hired Ms. Dugan as WCC's Assistant Banquet

Manager.

19. In that role, Ms. Dugan was responsible for planning and executing year-round events for private parties and for members at WCC, coordinating catering-related needs for groups and special events, conducting facility tours and sight visits for groups, and selling memberships to WCC.

20. Upon her hire, Troon promised to pay Ms. Dugan an hourly rate of $20.00 per hour, and bonus compensation in the amount of five percent (5%) of all gratuities paid to WCC in connection with events that she oversaw as Assistant Catering Manager.

21. In July 2023, Troon employed Mr. Rankin as General Manager of WCC, and he served as Ms. Dugan's direct supervisor.

22. At all times relevant to this action, Ms. Dugan's job performance was exemplary.

23. Almost immediately upon his undertaking the General Manager role, Mr. Rankin made Ms. Dugan uncomfortable with his statements and behavior, which were unwelcome and created a hostile work environment.

24. From July 2023 through September 2023, Mr. Rankin made repeated sexually explicit comments about Ms. Dugan and other female employees at WCC.

25. By way of specific example, on July 28, 2023, at WCC's "Farm to Fairway" Dinner, Ms. Dugan was wearing a formal dress that exposed a portion of her lower back. Mr. Rankin, who had only worked at WCC for a week or so, approached Ms. Dugan, put his arm around her, began rubbing the bare portion of her back up and down, leaned in and whispered into her ear, "I have a little project for you."

26. Mr. Rankin continued to whisper into Ms. Dugan's ear that he wanted her to

create menus for a table at the event.

27. Ms. Dugan felt incredibly uncomfortable and vulnerable because of Mr. Rankin's hand rubbing her bare back and she quickly stepped away from him.

28. Later that same night, another Troon employee, Megan Beckwith ("Ms. Beckwith"), a female, confided in Ms. Dugan that Mr. Rankin was winking, ogling, and flirting with her as well as other female Troon employees since he became General Manager.

29. Ms. Dugan responded to Ms. Beckwith that Mr. Rankin had also touched her inappropriately while whispering into her ear earlier that evening.

30. A few weeks later, two members of WCC, Terrelle Pryor and Joe Eisaman, learned about Mr. Rankin's conduct towards Ms. Dugan and his conduct directed at other female employees at WCC.

31. Upon learning of Mr. Rankin's conduct, Mr. Pryor and Mr. Eisaman posted comments about Mr. Rankin's improper conduct on a web application, called "Heja," which was used among thirty-five WCC members to organize golf tee times.

32. Soon after learning about Mr. Pryor's and Mr. Eisaman's posts on Heja, the Board of Directors of the WCC revoked Mr. Pryor's and Mr. Eisaman's memberships to WCC.

33. Ms. Dugan was so disarmed by Mr. Rankin's sexual touching, and Mr. Pryor's and Mr. Eisaman's dismissal from WCC for criticizing Mr. Rankin's conduct, that she felt she could not report the July 28, 2023, incident to anyone because Mr. Rankin was her direct supervisor and she feared she would lose her job if she reported the incident.

34. One week after Mr. Rankin inappropriately touched Ms. Dugan on July 28, 2023, two male Troon employees, Jerome Louie and Zachary Turek, called Ms. Dugan into

WCC's bar area and informed her that "Troon HR" was on the telephone and wanted to speak with her.

35. An individual named Amy Taylor identified herself via speakerphone, with Mr. Louie and Mr. Turek listening, and proceeded to ask Ms. Dugan questions about whether she was inappropriately touched in the workplace.

36. Ms. Dugan felt uncomfortable having two of her male co-workers staring at her and listening to Ms. Taylor's posing of questions to her that were of an extremely personal nature.

37. Continuing to fear that she would lose her job, Ms. Dugan neither confirmed nor denied Ms. Taylor's questions.

38. A few weeks later, Ms. Dugan was working at WCC's Labor Day Pool Party, and while she was actively checking guests in for the party, Mr. Rankin approached Ms. Dugan and told her, in a condescending tone that "the towel boy" could do her job and summarily sent her home.

39. Ms. Dugan only earned compensation for the hours she worked; thus, Mr. Rankin's directive that sent Ms. Dugan home negatively affected her compensation because she was deprived of her right to earn bonus compensation as a result of her working at the event.

40. One week later, on September 11, 2023, Troon held what it referred to as a "mandatory" anti-harassment training session overseen by Ms. Taylor

41. This was the first time since Ms. Dugan was hired that WCC held a formal presentation regarding anti-harassment in the workplace. It was also the first time Ms. Dugan was made aware that an anti-harassment policy or protocol existed at WCC.

42. During the presentation, Mr. Rankin was visibly absent and was instead pacing in and out of the presentation and chain smoking outside the training room while other employees were required to remain in the session.

43. At the conclusion of the anti-harassment presentation, Ms. Taylor entered Ms. Dugan's office and informed Ms. Dugan that Troon had a successful history of relocating employees to other positions within the Troon organization, and implied that Ms. Dugan might want to find another location within the Troon companies to work.

44. While Ms. Dugan was disarmed by Ms. Taylor's comment to encourage her to look for another job, she felt empowered by the anti-harassment session to inform Ms. Taylor about the incident on July 28, 2023.

45. Ms. Dugan explained the details of Mr. Rankin's touching her naked back, her lurching away from his touch, Mr. Rankin touching other women inappropriately, and his subsequent behavior of sending her home from the Labor Day pool party.

46. Ms. Taylor expressed shock and surprise to Ms. Dugan telling Ms. Dugan that she thought "the case had closed."

47. Ms. Dugan responded to Ms. Taylor that she hadn't reported the details to Ms. Taylor because she feared retaliation and explicitly told Ms. Taylor that she did not want Mr. Rankin to know she reported his conduct.

48. Ms. Dugan later learned that immediately following her conversation with Ms. Taylor, Ms. Taylor instantly went to Mr. Rankin's office to inform him about the details of her conversation with Ms. Dugan.

49. One day later, Ms. Dugan discovered that Mr. Rankin repeated his conversation with Ms. Taylor to another female Troon employee, Controller, Alexandra

Zorzi.

50. Incidentally, Ms. Zorzi had previously confided in Ms. Dugan that Mr. Rankin had touched Ms. Zorzi inappropriately on multiple occasions. Specifically, Mr. Zorzi revealed to Ms. Dugan that Mr. Rankin had also rubbed her back and touched her neck repeatedly.

51. On September 21, 2023, just days after Ms. Dugan reported her concerns to Ms. Taylor, WCC's Board President, James Kohosik, together with WCC Board member and attorney Sanford Aderson took Ms. Dugan aside in a restaurant located in WCC, and asked her to once again describe how Mr. Rankin had touched her in July of 2023.

52. Ms. Dugan informed Mr. Kohosik and Mr. Aderson about Mr. Rankin's conduct and also informed them that Mr. Rankin had inappropriately touched Ms. Zorzi.

53. At the conclusion of their conversation, Mr. Kohosik and Mr. Aderson told Ms. Dugan that they had informed Mr. Rankin that it was Ms. Dugan who made a report to Ms. Taylor about him.

54. Mr. Kohosik and Mr. Aderson then directed Ms. Dugan to stop talking about the incidents involving Mr. Rankin because it was causing other employees and WCC members to be "concerned."

55. From that date forward, Ms. Dugan became the subject of a series of unlawful retaliatory acts.

56. Mr. Rankin began going to great lengths to avoid Ms. Dugan and would not acknowledge her when they passed one another in the workplace.

57. Mr. Rankin took away tools and resources from Ms. Dugan that were necessary for her to perform her job, such as her subscriptions to event planning websites.

58. On at least three occasions in the fall of 2023, Ms. Dugan noticed that her paystub was missing payment for hours worked, commissions, and gratuities.

59. When Ms. Dugan alerted Mr. Rankin as to the errors in her compensation, he would antagonistically respond, "Oops, James made a mistake!"

60. Despite Ms. Dugan's discomfort, she scheduled a meeting with Mr. Rankin to ask him to correct the inaccuracies in her compensation.

61. When Ms. Dugan reported for the meeting, she was greeted by WCC Board member Debbie Menzies.

62. Ms. Dugan asked Mr. Rankin why a board member was participating in the meeting, and Mr. Rankin responded that Ms. Menzies' presence made Mr. Rankin "feel more comfortable."

63. During the meeting, and for the first time since Ms. Dugan began working at WCC, Mr. Rankin informed Ms. Dugan that she was no longer entitled to her contractual share of gratuities from events.

64. Thereafter, Mr. Rankin's wife began working events at WCC and assisted servers, as Ms. Dugan had previously done, which negatively impacted Ms. Dugan's compensation.

65. Mr. Rankin also began excluding Ms. Dugan from weekly manager's meetings. Prior to this time, Ms. Dugan had routinely attended these meetings since she began employment at WCC.

66. Mr. Rankin also began assigning Ms. Dugan's daily responsibilities, which included reviewing the menu and overseeing catering events, to others, including Mr. Rankin's wife.

67. On October 18, 2023, Mr. Rankin called Ms. Dugan to his office where she was greeted by Ms. Menzies in person, and Ms. Taylor by speakerphone.

68. Ms. Dugan was informed that the meeting was being recorded.

69. Mr. Rankin then stated to Ms. Dugan that he was disciplining her by "writing her up" because she took a day off without telling him.

70. Ms. Dugan was completely taken aback because she reported her day off and followed the same protocol that had been in place during her tenure, i.e., to inform Ms. Zorzi of a scheduled absence.

71. Throughout Ms. Dugan's tenure at WCC, she would routinely take a "floating weekday off" during a week when she worked both weekend days, as she did on that occasion.

72. Ms. Dugan immediately asked why Mr. Rankin did not approach her directly to let her know about any new protocols for schedule changes.

73. Mr. Rankin admitted that he did not feel comfortable speaking to Ms. Dugan directly given what "happened to us in the past."

74. Later that evening, at 10:12 p.m., Mr. Rankin sent an email to all Troon managers informing them that he was implementing a *new* protocol that required managers to make their calendars visible to all managers.

75. Despite several other managers having taken days off in September and October of 2023, before the implementation of the new policy, Ms. Dugan was the only manager "written up" for not informing Mr. Rankin of the change in her schedule.

76. On December 4, 2023, Ms. Dugan was terminated and informed that her position was being eliminated.

77. Soon after, Troon posted a job opening for Assistant Banquet Manager, the same position held by Ms. Dugan.

## VI. CAUSES OF ACTION:

### COUNT ONE AGAINST TROON AND WCC:
### VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### (HOSTILE WORK ENVIRONMENT)

78. Ms. Dugan re-alleges all of the factual allegations set forth above and incorporates the same by reference herein.

79. Troon and WCC subjected Plaintiff to and/or otherwise permitted the existence of a hostile work environment because of Ms. Dugan's sex in violation of Title VII.

80. Troon and WCC failed to take appropriate remedial action to address the hostile work environment created by sexual harassment that Plaintiff endured.

81. Troon and WCC acted with malice and reckless indifference to Plaintiff's civil rights and emotional and physical wellbeing.

82. As a result of Troon's and WCC's deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, and emotional pain and suffering.

### COUNT TWO AGAINST TROON AND WCC:
### VIOLATIONS OF TITLE VII OF THE PHRA
### (HOSTILE WORK ENVIRONMENT)

83. Ms. Dugan re-alleges all of the factual allegations set forth above and incorporates the same by reference herein.

84. Troon and WCC subjected Plaintiff to and/or otherwise permitted the existence of a hostile work environment because of Ms. Dugan's sex in violation of the PHRA.

85. Troon and WCC failed to take appropriate remedial action to address the hostile work environment created by sexual harassment that Plaintiff endured.

86. Troon and WCC acted with malice and reckless indifference to Plaintiff's civil rights and emotional and physical wellbeing.

87. As a result of Troon's and WCC's deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, and emotional pain and suffering.

### COUNT THREE AGAINST TROON AND WCC:
### VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### (DISPARATE TREATMENT)

88. Ms. Dugan re-alleges all of the factual allegations set forth above and incorporates the same by reference herein.

89. Troon and WCC subjected Plaintiff to and/or otherwise permitted the discrimination of Ms. Dugan because of her sex in violation of Title VII.

90. When Ms. Dugan complained about the matters set forth herein, Troon and WCC reduced her compensation, disciplined her, and ultimately terminated her employment, all of which were adverse employment actions, because of Ms. Dugan's sex.

91. As a result of Troon's and WCC's deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, and emotional pain and suffering.

### COUNT FOUR AGAINST TROON AND WCC:
### VIOLATIONS OF THE PHRA
### (DISPARATE TREATMENT)

92. Ms. Dugan re-alleges all of the factual allegations set forth above and incorporates the same by reference herein.

93. Troon and WCC subjected Plaintiff to and/or otherwise permitted the discrimination of Ms. Dugan because of her sex in violation of the PHRA.

94. When Ms. Dugan complained about the matters set forth herein, Troon and WCC reduced her compensation, disciplined her, and ultimately terminated her employment, all of which were adverse employment actions, because of Ms. Dugan's sex.

95. As a result of Troon's and WCC's deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, and emotional pain and suffering.

## COUNT FIVE AGAINST TROON AND WCC:
## VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## (RETALIATION)

96. Ms. Dugan re-alleges all of the factual allegations set forth above and incorporates the same by reference herein.

97. Ms. Dugan engaged in a protected activity under Title VII by reporting unwelcome and unlawful sexual harassment and/or sex discrimination in the workplace to several of Troon's and WCC's agents, including Ms. Taylor, Troon's human resource designee, and at least two WCC board members.

98. Shortly after Ms. Dugan reported her complaints, and in retaliation for those protected reports, Troon and WCC reduced Ms. Dugan's compensation, removed her from managers' meetings, singled her out for discipline, and terminated Ms. Dugan's employment, all of which were adverse employment actions.

99. The temporal proximity between Ms. Dugan's complaints and her termination indicates a causal connection between Ms. Dugan's complaints and Troon's and WCC's decision to terminate Ms. Dugan.

100. As a result, and in violation of Title VII, Ms. Dugan suffered lost compensation, lost opportunities for advancement, emotional distress, embarrassment, and humiliation.

101. As a result of Troon's and WCC's deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, and emotional pain and suffering.

## COUNT SIX AGAINST TROON AND WCC:
### VIOLATIONS OF THE PHRA
### (RETALIATION)

102. Ms. Dugan re-alleges all of the factual allegations set forth above and incorporates the same by reference herein.

103. Ms. Dugan engaged in a protected activity under the PHRA by reporting unwelcome and unlawful sexual harassment and/or sex discrimination in the workplace to several of Troon's and WCC's agents, including Ms. Taylor, Troon's human resource designee, and at least two WCC board members.

104. Shortly after Ms. Dugan reported her complaints, and in retaliation for those protected reports, Troon and WCC reduced Ms. Dugan's compensation, removed her from managers' meetings, singled her out for discipline, and terminated Ms. Dugan's employment, all of which were adverse employment actions.

105. The temporal proximity between Ms. Dugan's complaints and her termination indicates a causal connection between Ms. Dugan's complaints and Troon's and WCC's decision to terminate Ms. Dugan.

106. As a result, and in violation of the PHRA, Ms. Dugan suffered lost compensation, lost opportunities for advancement, emotional distress, embarrassment, and

humiliation.

107. As a result of Troon's and WCC's deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, and emotional pain and suffering.

### COUNT SEVEN AGAINST ALL DEFENDANTS: ASSAULT AND BATTERY

108. Ms. Dugan re-alleges all of the factual allegations set forth above and incorporates the same by reference herein.

109. Mr. Rankin physically touched and rubbed Ms. Dugan's bare back, without her consent, which constituted acts of assault and battery.

110. Specifically, on July 28, 2023, Mr. Rankin put his arm around Ms. Dugan, began rubbing her naked back up and down as she was wearing a backless dress, leaned in and whispered into her ear that he "had a little project" for her.

111. Defendants Troon and WCC are liable to Ms. Dugan for Mr. Rankin's conduct because: (a) Defendants Troon and WCC knew or should have known that Mr. Rankin was unfit for employment; (b) Defendants Troon and WCC used Mr. Rankin's services without proper instruction and with a disregard of the rights or safety of others; and/or (c) Defendants Troon and WCC authorized, ratified, and/or condoned Mr. Rankin's actions, which amounted to unlawful discrimination, retaliation, and assault and battery.

112. Defendants Troon and WCC engaged in the practices complained of herein with malice and/or reckless indifference to Ms. Dugan's rights.

113. As a result of Troon's, WCC's, and Mr. Rankin's deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, and emotional pain and suffering.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Ms. Dugan respectfully demands the following forms of relief:

a. Back pay;

b. Front pay;

c. Compensatory damages;

d. Punitive damages;

e. Pre and post-judgment interest;

f. Reasonable attorney fees and costs;

g. Declaratory and injunctive relief;

h. Special damages (including but not limited to reasonable attorney's fees and litigation costs, pain, suffering, inconvenience, mental anguish, emotional distress, loss of enjoyment of life, and other losses resulting from Defendants' above-described wrongful conduct);

i. Pre and post-judgment interest; and

j. Any and all other relief that the Court deems just and proper.

Dated: May 12, 2025

Respectfully submitted,

s/ *Beverly A. Block*
BLOCK & ASSOCIATES, LLC
By: Beverly A. Block, Esquire
6514 Wilkins Avenue
Pittsburgh, PA 15217

*Attorney for Plaintiff*